OPINION OF THE COURT
Howard E. Levitt, J.
Rhetoric is recorded on a rock that reposes on a ridge by the roadside. The rhetoric is in the form of a private political pronouncement. Its recording is in the form of words engraved on a plaque. The rock is a multiple-ton natural rock. The ridge it reposes on is of concrete to anchor it more firmly in *538 the ground of the side of the road called Peninsula Boulevard in the village called Hempstead. While the rock is in repose, the village officials are not.
Pursuant to a set of stipulated facts, the court is asked to determine whether the plaintiff, Incorporated Village of Hempstead, may compel the removal of defendant Carlson’s rock either because it is in violation of the village Building Code or because the plaque affixed to it contains a message not permitted by village ordinances.
Defendant Carlson’s rock located at 505 Peninsula Boulevard, Hempstead, New York, is a boulder approximately 7 feet high by 7 feet wide and 4 feet deep, and by all accounts weighs several tons. Defendant Carlson, a contractor by profession, had the rock placed adjacent to an office building owned by him, calling it a "taxpayer’s tombstone”. Attached to the rock is a 19 V2 inch by 25 V2 inch plaque which contains his personal political polemic:
"taxpayers
TOMBSTONE
TRIANGLE
DEDICATED TO THE TAXPAYERS OF NASSAU COUNTY SINGLE AND WED, LIVING OR DEAD, OVERTAXED AND ROBBED, TILL THEY BLED OR FLED THAT IS HOW IT IS SAID.
WHITEY CARLSON
JULY 3, 1982”
The village does not want even "a piece of the rock” and argues that the rock is a "building” or "structure” and as such is regulated by the village Building Code.
Section 1.2.1 of said code states: "Before the construction or alteration of any building, wall or structure, or any part of either, or of any platform, staging or flooring to be used for standing or seating purposes, or the creation, addition or enlargement of any room used for living purposes, or of any storage space, or before the construction or alteration of the plumbing or draining of any building, structure or premises is commenced, the owner or lessee or agent of either, or the *539 architect or builder employed by the owner or lessee in connection with the proposed construction or alteration, shall submit to the Board of Trustees a detailed statement in duplicate of the specifications, on appropriate blanks to be furnished to applicants by the Board of Trustees, and such plans and structured detail drawings of the proposed work as the Board of Trustees may require.” Section 1.3.1 states: "It shall be unlawful to construct or alter any building, structure, wall, platform, staging or flooring, or any part thereof, or the creation, addition or enlargement of any room used for living purposes or any storage space, or any plumbing and drainage until the application and plans as required in 1.2.1 shall have been approved by the Board of Trustees, and a written permit issued by them.” Village of Hempstead Code of Ordinances § 16-183 states: "No story of any building in a Business B district shall be nearer to the street line of any street on which it faces than five (50 feet from the street line for business or public building.”
It is undisputed that defendant Carlson filed no plans; that no permit was received, and that the rock is within five feet of the street line.
The village code does not define "building” or "structure”, however, the New York State Building Construction Code (9 NYCRR 606.3) does provide definitions. These definitions, binding on the village (as of Jan. 1, 1980, the village passed a resolution accepting the applicability of the State Building Construction Code in its entirety), provide as follows:
"(20) Building. A structure wholly or partially enclosed within exterior walls, or within exterior and party walls, and a roof, affording shelter to persons, animals or property.”
"(183) Structure. An assembly of materials, forming a construction framed of component structural parts for occupancy or use, including buildings.” (9 NYCRR 606.3 [a] [20], [183].)
By definition, a building or structure is something that is occupied or capable of being occupied. Thus, the rock in this case, clearly, is not a building within the village code and there is no violation of its provisions.
The village claims, additionally, that the plaque affixed to the rock is in violation of the village Code of Ordinances § 13-55 (b) (1) which provides: "1. Detached sign. One (1) single or double faced detached sign shall be permitted and shall advertise only the business, products or services provided on the premises. Two such signs are permitted where premises *540 have an area exceeding ten thousand (10,000) square feet or having a frontage on two (2) or more public streets or parking field” (emphasis added).
The village argues that the plaque is impermissible because it does not advertise the products or services provided on the premises. The village further argues that the ordinances should be upheld because it is a valid exercise of its police power to provide for the general welfare notwithstanding the curtailment of private property rights. (Dovman v Yahashi, 109 Misc 2d 484.)
While the village has the power to regulate for the general welfare of its citizens, the general welfare is not threatened here. The village has received no complaints from the general public concerning defendant Carlson’s rock. The people’s welfare would be threatened more by the restriction of free speech than a plaque whose wording does not advertise business products or services rendered.
Nowhere is the intimate connection between property rights and one’s freedoms more evident than in the area of free speech. The right to own and dispose of our personal resources allows us to use those resources to communicate ideas. Thus, the United States Supreme Court has held: "Our cases have required the most exacting scrutiny in cases in which a State undertakes to regulate speech on the basis of its content.” (Widman v Vincent, 454 US 263, 276 [1981].)
Under the village ordinance commercial signs are permitted while noncommercial signs are banned. The plaque conforms to the village ordinance in all ways (i.e., signs) except in content.
In Metromedia, Inc. v San Diego (453 US 490 [1981]) the Supreme Court struck down an ordinance similar to that in the instant case. The San Diego ordinance prohibited outdoor advertising except for on-site commercial advertising. The court held that the ordinance violated the 1st and 14th Amendments. "The fact that the city may value commercial messages relating to onsite goods and services more than it values commercial communications relating to offsite goods and services does not justify prohibiting an occupant from displaying its own ideas or those of others” (453 US 490, 513, supra).
The ordinance purports to value commercial speech above all other kinds of speech, including political speech. It thus presents a curious inversion of the usual constitutional *541 standard which values political speech above any other. That part of the ordinance which regulates the content of signs cannot withstand the required strict scrutiny and is unconstitutional.
It is noted though that the village may regulate speech in ways that are content-neutral. The plaque here is within the village regulations with regard to size. However, village Code of Ordinances § 13-69 provides that: "No sign shall hereafter be displayed, erected, altered, repaired, replaced or relocated, until a sign permit, as may be required by this Article, has been issued by the Superintendent of the Building Department. A separate permit shall be required in each sign affected.”
Defendant Carlson received no permit to display the plaque. Inasmuch as defendant Carlson could not, prior to this ruling, have applied and received a permit for a plaque containing political speech, this defect cannot be held against him here. The village should allow defendant Carlson sufficient time to apply for the proper sign permits.
It is the view of the court that the village will have to live, if not with a piece of this rock, at least in peace with this rock. Perhaps a future rock will have a plaque extolling the benefits received by Nassau County taxpayers and thus free speech will have its ultimate achievement — diversity of opinion.
Plaintiffs first cause of action seeking removal of defendant Carlson’s rock is, therefore, dismissed as are plaintiffs second and third causes of action seeking a declaration that defendant Carlson is in violation of village ordinances and $5,000 in attorney’s fees, respectively.